<u>NOT FOR PUBLICATION</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Maria Andino O/B/O<br>Christian Rosario,<br><br>    Plaintiff,<br><br>  v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>    Defendant. | CIVIL NO. 05-4886(NLH)<br><br><br>**<u>OPINION</u>** |

APPEARANCES:

Alan H. Polonsky, Esq.
512 South White Horse Pike
Audubon, NJ 08106
    Attorney for Plaintiff

Christopher J. Christie
United States Attorney
    By:  Karen M. Ortiz
        Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278
    Attorney for Defendant

**HILLMAN**, District Judge:

This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), to review the final decision of the Commissioner of the

Social Security Administration, denying the application of the

Plaintiff filed on behalf of her son, a minor, Christian Rosario,[1] for Child Supplemental Security Income under Title XVI of the Social Security Act.  42 U.S.C. § 1382c(a)(3)(c).  The two issues this Court must determine are whether the Administrative Law Judge ("ALJ") erred in finding that C.R.'s impairments 1) did not meet the severity of a Listed Impairment and 2) were not functionally equivalent to a Listed Impairment.  For the reasons stated below, this Court will affirm that decision.

**I. Background**

  A. <u>Procedural History</u>

    Plaintiff filed an application on behalf of her son, C.R., for Supplemental Security Income ("SSI") on February 20, 2003, with an alleged disability onset date of August 1, 1996.  (R. at 77-80.)  The Plaintiff alleged C.R. was afflicted with a number of impairments including severe depression, obsessive compulsive disorder, anxiety disorder, low self-esteem, and speech and vision problems.  (R. at 111.)

    Plaintiff's application for SSI was initially denied.  (R. at 50.)  Plaintiff's timely filed Request for Reconsideration was also subsequently denied.  (R. at 54.)  A hearing was requested (R. at 58) and held before an ALJ on January 3, 2005, in Voorhees, New Jersey.  (R. at 248.)  The ALJ issued a decision

_____

[1] Plaintiff has identified the full name of her minor child in her public filings.  For convenience only, Christian Rosario will hereinafter be referred to as "C.R."

2

denying benefits on March 18, 2005.  (R. at 173-79.)  Plaintiff
then filed a timely Request for Appeals Council Review which was
denied on August 26, 2005.  (R. at 4-6.)  However, prior to the
denial, the Appeals Council allowed Plaintiff to submit any
additional evidence that was "new and material to the issues."
(R. at 27-28.)

Accordingly, Plaintiff submitted additional notes from a
psychiatrist, Dr. Feigl (R. at 17-26), who met with C.R., and
documentation citing a number of new suspensions from school (R.
at 8-12).  Dr. Feigl's diagnosis was "major depressive disorder."
(R. at 24.)  After the Appeals Council's denial, Plaintiff filed
the present action with this Court on April 4, 2006, seeking
judicial review of the ALJ's decision.

B. Evidence in the Record

C.R. was born on August 6, 1993 (R. at 27) and attends
regular education classes for all subjects except Speech for
which he attends out-of-class support in the form of one, 45-
minute session per week (R. at 142).  C.R. was diagnosed with
"major depression" by South Jersey Behavioral Health Resources on
January 24, 2003.  (R. at 172.) C.R.'s Global Assessment
Functioning (GAF) score at that time was 50, indicating,
according to the Diagnostic and Statistical Manual of Mental
Disorders, Fourth Edition (DSM-IV), "serious symptoms" (e.g.,
suicidal ideation, severe obsessional rituals, frequent

shoplifting) or any "serious impairment in social, occupational, or school functioning" (e.g., no friends, unable to keep a job). (R. at 176.)

C.R.'s psychiatric visit with Dr. Lawrence G. Mintzer on June 22, 2003 resulted in the same diagnosis of a "depressive disorder" and an "adjustment disorder with anxiety." (R. at 228.) C.R.'s GAF score was 57, indicating "moderate symptoms" (e.g., flat affect and circumstantial speech, occasional panic attacks) or "moderate difficulty in social, occupational, or school functioning" (e.g., few friends, conflicts with peers or co-workers). (R. at 228.) Dr. Mintzer also stated that C.R. had "moderate emotional and behavioral problems, which are sufficiently great enough to interfere with his academic and social functioning." (R. at 228.) Dr. Mintzer found C.R. to be "moderately impaired" as a result of his emotional and behavioral problems. (R. at 228.)

In March 2003, a questionnaire was sent by the State Agency to C.R.'s third grade teacher, Ms. Mary Stone. (R. at 142-49.) After observing C.R. for six months, Ms. Stone reported that C.R. was at his grade level academically in reading, math, and written expression. (R. at 142.) The questionnaire given to Ms. Stone matched the domains of functioning that are used to determine whether a functional limitation exists under the Social Security Act.

4

With regard to the first area of acquiring and using information, Ms. Stone found "a slight problem" in three areas and "no problem" in the other seven areas.  (R. at 143.) In attending and completing tasks, Ms. Stone found "a very serious problem" in three areas: waiting to take turns, organizing own things or school materials, and working without distracting self or others.  (R. at 144.) Ms. Stone found "a serious problem" in changing from one activity to another, completing class/homework assignments, and working at a reasonable pace/finishing on time. (R. at 144.) "Obvious problems" were found in refocusing to task when necessary, carrying out single-step instructions, and completing work accurately without careless mistakes.  (R. at 144.)

In the third area of functioning, interacting and relating with others, Ms. Stone found C.R. to have "a very serious problem" in the areas of playing cooperatively with other children, making and keeping friends, seeking attention appropriately, expressing anger appropriately, asking permission appropriately, following rules (classroom, games, sports), and relating experiences and telling stories.  (R. at 145.) "A serious problem" was found in the areas of respecting/obeying adults in authority, using language appropriate to the situation and listener, introducing and maintaining relevant and appropriate topics of conversation, taking turns in a

conversation, and using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation.  (R. at 145.)

In the fourth area of moving about and manipulating objects, Ms. Stone found that C.R. had "a very serious problem" with "showing a sense of body's location and movement in space."  (R. at 146.) Ms. Stone noted no "serious problems" and three activities with "obvious problems" including moving the body from one place to another, demonstrating strength, coordination, and dexterity in activities or tasks, and managing the pace of physical activities or tasks.  (R. at 146.) In the final area of caring for himself, Ms. Stone found C.R. had no "serious" and no "very serious" problems at all.  (R. at 147.) C.R. had "an obvious problem" with five activities including handling frustration appropriately, being patient when necessary, identifying and appropriately asserting emotional needs, responding appropriately to changes in own mood, and using appropriate coping skills to meet daily demands of school environment.  (R. at 147.) In conclusion, Ms. Stone made no additional comments.  (R. at 149.)

C.R.'s mother, Ms. Maria Andino, testified that C.R. was previously attending special education classes but had transferred to "mainstreamed" classes recently.  (R. at 257.) Ms. Andino stated that C.R. was "severely depressed . . . very

emotional . . . [and] always by himself." (R. at 257.) Ms. Andino also testified that C.R. was taking Prozac[2] and DDAVP[3] for bed-wetting. (R. at 258.) She also stated that C.R.'s fights at school are instigated by others teasing him (R. at 268), generally about his weight (R. at 269). However, sometimes C.R. instigates the fights. (R. at 269.) Ms. Andino gave one example of C.R. pouring milk over another child's head in the cafeteria. (R. at 269.)

During C.R.'s testimony, he answered "yes" to the ALJ's inquiry as to whether there were any nice kids at the school that he was friendly with. (R. at 274.) However, C.R. stated that there were also bullies. (R. at 274.) C.R. also answered in the affirmative in response to the ALJ's questions about whether he was behaving and staying out of trouble in school. (R. at 276.)

In response to the Appeals Council's offer to submit new evidence, Plaintiff produced documentation of a number of new disciplinary problems C.R. had at school and another evaluation by Dr. Feigl. Among the infractions was a one-day suspension for pouring milk on another student's head (R. at 11) and three separate suspensions for fighting (R. at 8-10). Dr. Feigl's

---

[2] Prozac is a frequently prescribed antidepressant. PHYSICIANS' DESK REFERENCE 1771-79 (60th ed. 2006).

[3] DDAVP is an antidiuretic hormone that increases the body's water conservation. PHYSICIANS' DESK REFERENCE 2895-96 (60th ed. 2006).

notes indicated a GAF score of 50 ("serious symptoms") as recently as February 25, 2005 (R. at 18) and a GAF score of 57 ("moderate symptoms") on June 16, 2005 (R. at 20).

Dr. Feigl also noted "age-appropriate" thought process/association and speech, intellectual function that "appears average," "good judgment" and "good insight" (R. at 23), and that C.R. "has not had crying spells" (R. at 19). C.R. stated to Dr. Feigl that he is "easily frustrated" and "cries easily," has trouble sleeping, and is "sad because kids are scared of him." (R. at 21.) While C.R.'s mother suffers from depression and has attempted suicide (R. at 23), C.R., according to Dr. Feigl, has "no history of self-injurious behavior or expressing anger toward himself" (R. at 21).

## II. Discussion

In his March 18, 2005 decision, the ALJ found that C.R. had depression that was "severe"; however, it did not rise to the level of severity required under the Listings of Impairments. The ALJ also concluded that C.R. had only a "marked" limitation in the domain of interacting and relating to others. Since no other "marked" or "extreme" impairment existed, C.R.'s impairments did not functionally equal the listings. Therefore, C.R. was not under a "disability" as defined under the Social Security Act. Plaintiff has appealed this decision.

A.  <u>Standard of Review</u>

8

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits. <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001); <u>Sykes v. Apfel</u>, 228 F.3d 259, 262 (3d Cir. 2000); <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)(quoting <u>Consolidated Edison Co. V. NLRB</u>, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id.</u> The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. <u>See</u> <u>Brown v. Bowen</u>, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. <u>See</u> <u>Daring v. Heckler</u>, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" <u>Schonewolf v. Callahan</u>, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting <u>Willbanks v. Secretary of Health & Human Servs.</u>, 847 F.2d 301, 303 (6th Cir. 1988) (quoting <u>Universal Camera Corp. V. NLRB</u>, 340 U.S. 474, 488 (1951)).

9

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004).  In terms of judicial review, a district

court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.

Apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

B.    Standard for Disability Insurance Benefits

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical and/or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A).

An ALJ employs a three-step process when evaluating a child's claim of disability.  20 C.F.R. § 416.924. In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity" as defined in 20 C.F.R. §§ 416.972, 416.924(b).  If the claimant is so engaged, his application will be denied. 20 C.F.R. § 416.924(b).  In the

11

second step, the ALJ determines whether the claimant has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906.  If a claimant does not have a "medically determinable impairment," or if the claimant's impairment is "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations," then the claimant will not be found disabled. 20 C.F.R. § 416.924(c).

For the final step, in order to be considered disabled for the purposes of the Social Security Act, the claimant's impairment must meet, or be medically or functionally equal in severity to, an impairment listed in the Appendix (a "Listing"). 20 C.F.R. § 416.924(d).  A claimant's impairment medically equals a Listing when "the medical findings are at least equal in severity and duration of the listed findings." 20 C.F.R. § 416.926(a).  An ALJ will compare medical evidence in the record to corresponding medical criteria shown for the listed impairment to make this determination. 20 C.F.R. § 416.926(a).

If a claimant's impairment does not meet, or is not medically equal to a listed impairment, the ALJ will next determine if the impairment is "functionally equal" to the listed

12

impairments. 20 C.F.R. § 416.926a(a).  A claimant's functional domains are evaluated within six categories: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).  To satisfy the "functionally equal" standard, a claimant must show that he/she suffers from an impairment of "listing-level" severity, meaning that the impairment "results in 'marked' limitations of two domains of functioning or 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a).

A "marked" impairment "is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." 20 C.F.R. § 416.926a(e)(2)(I).  A "marked" limitation will be found when the impairment "interferes seriously with your ability to independently initiate, sustain, or complete activities." Id.  A "marked" limitation is one that is "more than moderate" but "less than extreme." Id.  An "extreme" limitation "is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." 20 C.F.R. § 416.926a(e)(3)(I).  An "extreme" limitation will be found when the impairment "interferes very seriously with your ability to independently

initiate, sustain, or complete activities." 20 C.F.R. §
416.926a(e)(3)(I).  An extreme limitation is more than marked but
does not mean a total lack or loss of ability to function. <u>Id.</u>

In the first step, the ALJ found that C.R. was not engaged
in "substantial gainful activity."  In step two, the ALJ found
that C.R. had depression that was "severe"; however, it did not
rise to the level of severity as that term is defined under the
Listings of Impairments.  In step three, the ALJ also concluded
that C.R. had only a "marked" limitation in the domain of
interacting and relating to others.  Since no other "marked" or
"extreme" impairment existed, C.R.'s impairments did not
functionally equal the Listings.  Therefore, C.R. was not under a
"disability" as defined under the Social Security Act.

C.   <u>Plaintiff's Arguments</u>

Plaintiff argues that the Commissioner's decision denying
C.R. benefits was in error because the ALJ erred in determining
that there was "substantial evidence" that C.R. was not disabled.
Specifically, Plaintiff argues that (1) the ALJ failed to provide
a rationale for finding that C.R.'s condition was not of a level
of severity that equaled the requirements of the Listings of
Impairments, and (2) the ALJ's determination that C.R. had only a
"marked" impairment in the area of interacting and relating to
others and did not have a "marked" impairment in attending or

completing tasks was not supported by substantial evidence or an adequate rationale.  For the following reasons, this Court will affirm the decision of the ALJ and Plaintiff's application will be denied.

    1.    **Whether the ALJ failed to provide a rationale for finding C.R.'s condition was not of a level of severity that equaled the requirements of any Listing of Impairments**

Plaintiff argues that the ALJ's decision as to the level of severity of C.R.'s symptoms under the Listings of Impairments is simply a "pro forma" statement.  (Pl. Br. at 15.)  The Commissioner counters that the ALJ "fully referenced and analyzed the medical evidence" and the substantial inadequacies the Third Circuit found unacceptable in Burnett, 220 F.3d at 119-20, are not present in this case.  (Def. Br. at 5-6.)

In Burnett, 220 F.3d 112, the Third Circuit found the ALJ's "conclusory statement" to be "beyond meaningful judicial review" and "hopelessly inadequate."  Id. at 119-20.  The ALJ's analysis of whether or not Burnett's impairment matched or was equivalent to a Listed Impairment consisted, in its entirety, of the following language: "Although [Burnett] has established that she suffers from a severe musculoskeletal [impairment], said impairment failed to equal the level of severity of any disabling condition contained in Appendix 1, Subpart P of Social Security Regulations No. 4."  Id. at 119.  The ALJ failed to explain any of the evidence and did not even mention which specific listed

15

impairment applied to Burnett's case.  Id.

Subsequent cases have clarified the concerns expressed by
the Third Circuit in Burnett.  In Jones v. Barnhart, 364 F.3d 501
(3d Cir. 2004), the court held that the ALJ's analysis of whether
the claimant's impairment met the requirements of any Listing of
Impairments satisfied the Burnett standard.  Id. at 504-05.  The
court stated that "Burnett does not require the ALJ to use
particular language or adhere to a particular format in
conducting his analysis.  Rather, the function of Burnett is to
ensure that there is sufficient development of the record and
explanation of findings to permit meaningful review."  Id. at
505.  The court then found that, "read as a whole," the ALJ's
decision reviewed and considered the necessary factors.

In Ochs v. Comm'r of Soc. Sec. Admin., 187 Fed.Appx. 186 (3d
Cir. 2006), the court stated that a specific Listing need not be
explicitly mentioned by the ALJ as seemed to be required under
Burnett.  The court made plain that, under the Jones standard,
Burnett "does not require the ALJ to use particular language . .
. the function of Burnett is to ensure that there is sufficient
development of the record . . .."  Id. at 189 (quoting Jones, 364
F.3d at 505).  The court went on to reiterate the standard for
rejecting evidence established by the Third Circuit in Cotter,
stating that "the ALJ is not required to supply a comprehensive
explanation for the rejection of evidence; in most cases, a

16

sentence or short paragraph would probably suffice."  Id.
(quoting Cotter, 650 F.2d at 482); see also Santiago v. Comm'r of
Soc. Sec. Admin., 131 Fed.Appx. 344, 346 (3d Cir. 2005); Williams
v. Comm'r of Soc. Sec. Admin., 156 Fed.Appx. 501, 504-06 (3d Cir.
2005); Jaramillo v. Comm'r of Soc. Sec. Admin., 130 Fed.Appx.
557, 561-62 (3d Cir. 2005).

Plaintiff argues that the ALJ's explanation is a "similar
pro forma reference" to the provisions of the Listings of
Impairments that was found wanting in Burnett.  (Pl. Br. at 15.)
Specifically, Plaintiff argues that the following explanation by
the ALJ is as inadequate as the explanation given in Burnett:

> The Administrative Law Judge finds that there
> is no objective evidence in the record to
> support a finding that the claimant's
> condition meets or medically equals this
> Listing requirement or any other Listing.
> Additionally, no treating or examining
> physician has mentioned findings equivalent
> in severity to the criteria of any Listed
> impairment.  In reaching this conclusion, the
> undersigned has also considered the opinion
> of the State Agency medical consultants who
> evaluated the issue at the initial and
> reconsideration levels of the administrative
> review process and reached the same
> conclusion that the claimant's impairment did
> not meet or equal the Listing (20 C.F.R.
> 416.927 and Social Security Ruling 96-6p).

(R. at 37.)  As the Third Circuit found in Barnhart, the ALJ must
only provide a "sufficient development of the record and
explanation of findings to permit meaningful review."  364 F.3d
at 505.  Providing a specific Listing and discussing the evidence

17

are sufficient to meet the Burnett standard.   See Jaramillo, 130
Fed.Appx. at 561.

In this case, the ALJ took "particular note of" Listing
112.04, Mood Disorders and also referenced Listing 112.02B which
states the criteria for finding whether a claimant's disability
meets Listing 112.04, Mood Disorders.  (R. at 36-37.)  The ALJ's
specific reference to a particular Listing is enough to
distinguish the present case from Burnett.

Plaintiff also fails to recognize the significance of the
language used by the ALJ referring to Plaintiff's failure to meet
the burden of proof.  The ALJ's first sentence stating that he
"finds that there is no objective evidence in the record to
support a finding that the claimant's condition meets or
medically equals this Listing requirement or any other Listing"
indicates a failure to meet the burden imposed upon the claimant
at step three to show that he suffers from a "severe" impairment.
See McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360-361 (3d Cir.
2004); Williams, 156 Fed.Appx. at 505 (finding ALJ's statement
that the record "does not disclose medical findings which meet or
equal in severity the clinical criteria of any impairment listed"
adequately facilitated judicial review).  Plaintiff's argument
that the ALJ's explanation is virtually identical to the
inadequate statement given in Burnett overlooks the relevance of
Plaintiff's failure to meet his burden of proof and subsequent

18

cases finding nearly identical language sufficient.

In addition, Plaintiff's contention that the ALJ's reference to the opinions of the State Agency medical consultants is "merely saying what went before" (Pl. Re. Br. at 2) ignores the significant weight that an ALJ may place upon their evaluations. As the court held in Jones v. Sullivan, 954 F.2d 125 (3d Cir. 1991), an ALJ may rely upon State Agency consultants even in the face of the conflicting opinions of treating physicians so long as the ALJ provides a reason for doing so.  Id. at 129; see also Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985) (upholding ALJ's determination that a lack of clinical evidence outweighed the testimony of claimant and her treating physicians).

The Commissioner has also promulgated subsequent Social Security Rulings ("SSR"), binding upon the ALJ, describing the relevance and weight to be afforded the opinions of both State Agency consultants and treating physicians.  20 C.F.R. § 402.35(b)(1).  SSR 96-6p states that while the ALJ is responsible for finding whether or not a particular Listing of Impairments is met, an ALJ "may not ignore" the opinions of State Agency consultants.  Also, if the State Agency consultant's opinion is based on "a complete case record" and "more detailed and comprehensive information than what was available to the individual's treating source," then the State Agency consultants' opinions may be "entitled to greater weight than the opinions of

19

treating or examining sources."  SSR 96-6p.

As the ALJ noted in his decision, the State Agency medical consultants "evaluated the issue at the initial and reconsideration levels" (R. at 37) and had the benefit of the questionnaire sent to C.R.'s teacher, Ms. Stone, when conducting their review of the entire record.  The two examining physicians, Dr. Mintzer and Dr. Feigl, did not base their evaluations on the complete case record and were not privy to the "more detailed and comprehensive information," including Ms. Stone's questionnaire, that the State Agency consultants had available to them.  SSR 96-6p.  As such, it was within the ALJ's discretion to rely upon the State Agency consultants' opinions despite the presence of conflicting evidence.  Id.; see also Jones, 954 F.2d at 129.

2.  **Whether the ALJ's determination that C.R. had only a "marked" impairment in the area of interacting and relating to others and did not have a "marked" impairment in attending and completing tasks is supported by substantial evidence or an adequate rationale**

The ALJ concluded that C.R. had a "marked" limitation in the domain of interacting and relating to others and did not have a "marked" impairment in the domain of attending and completing tasks.  Since two "marked" impairments or one "extreme" impairment is required, the ALJ found that C.R.'s impairments did not functionally equal the Listings.  Plaintiff argues that C.R.'s impairment relating to interacting and relating to others is "severe," primarily on the basis of the report submitted by

Ms. Stone, C.R.'s teacher.  Plaintiff also contends, again, primarily based on Ms. Stone's testimony, that C.R. has a "marked" impairment in the area of attending and completing tasks.  Therefore, Plaintiff argues that the ALJ's rationale regarding both Listings is inadequate and not supported by substantial evidence.

Plaintiff also argues that the ALJ's interpretation of Dr. Mintzer's June 22, 2003 observation that C.R.'s attention span was "good" (R. at 40) along with, more importantly, Ms. Stone's testimony regarding both Listings fails the Baerga standard (R. at 19). The standard established in Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974), that an ALJ's opinion must meet provides:

> [A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. . . . It is incumbent upon the examiner to make specific findings . . . the court may not speculate as to his findings. Williams v. Celebrezze, 359 F.2d 950 (4th Cir. 1966).  'We think it is not too much to require that an administrative decision that a claimant is not eligible . . . be supported by explicit findings of all facts that are essential to the conclusion of ineligibility.'  Choratch v. Finch, 438 F.2d 342, 343 (3d Cir. 1971).

Id. at 312-13.

Plaintiff cites Hargenrader v. Califano, 575 F.2d 434 (3d

Cir. 1978), and <u>Dobrowolsky v. Califano</u>, 606 F.2d 403 (3d Cir. 1979), two cases that interpreted the <u>Baerga</u> standard, for the proposition that the ALJ's opinion is not supported by substantial evidence.  (Pl. Br. at 19.) In <u>Hargenrader</u>, the court found that the ALJ's failure to provide any specific factual findings regarding whether the claimant had an "allergy" or a "disease" was deficient.  575 F.2d at 437-38.  The ALJ's apparent assumption that the claimant had a mere "allergy" was based entirely on the claimant's use of the word in his testimony.  <u>Id.</u> However, this was contrary to expert medical testimony that no proof of an allergy existed and, therefore, failed the standard in <u>Baerga</u>, 500 F.2d at 312-13.

In <u>Dobrowolsky</u>, the court found that the ALJ's unexplained and unsupported reliance upon the opinion of the vocational expert was inadequate.  606 F.2d at 410.  Therefore, the ALJ failed to "make specific findings" in accord with the <u>Baerga</u> standard.  500 F.2d at 312-13.  The court also expressed concern about regarding the vocational expert's testimony as substantial evidence since the vocational expert was asked to interpret medical testimony and reach an ultimate conclusion on the issue, which invaded an area reserved exclusively to the Commissioner. <u>Id.</u>; <u>see also</u> SSR 96-5p (explaining the weight to be afforded medical source opinions on issues reserved to the Commissioner).

In this case, regarding the area of "interacting and

relating to others," the ALJ noted that Ms. Stone indicated on the questionnaire that C.R. had "very serious" problems in seven of the thirteen areas and "serious" problems in five of the six other areas.  (R. at 41.)  The ALJ did not rely solely on the "cooperative and friendly" comment made by Dr. Mintzer.  Id. Plaintiff omits in her brief the evidence referred to by the ALJ regarding the evaluation conducted on March 8, 2004 by the Special Services Department of Pennsauken Public Schools (R. at 41) as well as the determination, on more than a single occasion, by the State Agency medical consultants that C.R. had only a "marked" limitation in the domain of "interacting and relating to others" (R. at 42).  The ALJ noted that while problems certainly existed to rise to the level of a "marked" impairment, C.R.'s behavior had improved since the first grade and, during a particular exercise, C.R. had "interacted appropriately."  (R. at 41.)

The ALJ also referred to C.R.'s testimony.  (R. at 273-74.) C.R. stated that he likes his teacher and that she is nice.  Id. C.R. also testified that although he regularly gets into fights at school, primarily due to other kids calling him names, some kids are nice.  (R. at 274-75.)  The ALJ also noted that C.R.'s mother testified that C.R., in general, "gets along with her, other adults, and school teachers."  (R. at 41.)

In the area of "attending and completing tasks," the ALJ

23

referenced Ms. Stone's questionnaire in which she stated that C.R. "had trouble remembering what he is told to do, has a hard time focusing and concentrating on things, and is very forgetful and easily distracted."  (R. at 40.)  The ALJ also noted Ms. Stone's response stating that C.R. had "very serious" problems with "waiting to take turns, organizing his own things or school materials, and in working without distracting self or others." Id.  In addition, the ALJ noted Ms. Stone's statement that C.R. had "obvious" problems with paying attention "when spoken to directly, focusing long enough to finish [an] assigned activity or task, and carrying out multi-step instructions."  Id.

However, the ALJ also found that other evidence indicated positive behavior.  The ALJ referenced Ms. Stone's statement that C.R. had only a "slight" problem in "refocusing to tasks when necessary, carrying out single-step instructions, and completing work accurately without careless mistakes."  Id.  Ms. Stone's response that C.R. had "no problems in sustaining attention during play/sports" was also noted by the ALJ.  Id.  Moreover, the ALJ referred to Dr. Mintzer's June 22, 2003 meeting during which C.R.'s attention span was "good" and the State Agency medical consultants' determination on July 9, 2003, July 15, 2003, and October 14, 2003 that C.R.'s impairment in the domain of "attending and completing tasks" was "less than marked."  Id. In conclusion, the ALJ referenced the evaluation of the Special

24

Services Department of Pennsauken Public Schools on March 8, 2004
that found that although C.R. was "easily distracted by [the]
inconsequential activities of his neighbors . . . academically he
has done well and is performing at or above grade level in
several areas, including broad reading, word identification,
passage comprehension, oral expression, picture vocabulary, story
recall, broad math, and calculation."  Id.

    In addition to the presence of conflicting evidence
regarding the severity of either of these two domains, there is
no medical opinion directly addressing whether Plaintiff has a
disability.  While the questionnaire submitted by Ms. Stone and
the testimony of C.R.'s mother indicate C.R. does have an
impairment, this is not inconsistent with the findings of the
ALJ.  Even if a treating physician presented an opinion clearly
stating that C.R. had a "severe" or "marked" impairment in either
of these two domains, such evidence alone would not be
dispositive.  Under 20 C.F.R. § 416.927 and as clarified in SSR
96-5p, the determination of whether an impairment is functionally
equivalent in severity to any Listing is not a medical issue;
rather, it is an administrative finding squarely within the
purview of the Commissioner.  See SSR 96-5p.

    Furthermore, SSR 96-5p specifically states that the
determination of whether an individual is "disabled" is the
Commissioner's and "even when [opinions are] offered by a

25

treating source, they can never be entitled to controlling weight or given special significance." SSR 96-5p. Ms. Stone, while in direct contact with C.R. on a daily basis, can not be assumed to be familiar with the precise definitions of "marked" and "severe" as used in the regulations and is not a "treating source" providing a medical opinion. Ms. Stone's characterization in the questionnaire of any of C.R.'s impairments as "serious" is not dispositive of the issue regarding C.R.'s level of severity. To do so would be an abdication of the Commissioner's authority and responsibility to arrive at a conclusion about C.R.'s disability. In short, there is no opinion in the record, by a medical expert or otherwise, that squarely conflicts with the ALJ's determination of the severity of C.R.'s impairment in any domain. The only medical opinions that address the severity of C.R.'s impairment, the State Agency consultants', reach the same conclusion as the ALJ.

In this case, the ALJ presented in his opinion a review of Ms. Stone's evaluation, both negative and positive, and applied that evidence in determining the severity of C.R.'s impairment. Unlike the situations in Hargengrader and Dobrowolsky, where it was found that evidence was simply ignored or assumed, 575 F.2d at 437-38, and where an ALJ improperly deferred the ultimate issue of disability to a vocational expert unqualified to offer a medical conclusion, 606 F.2d at 410, the ALJ in this case

considered the evidence Plaintiff points to on appeal, particularly Ms. Stone's evaluation, and weighed that evidence against evaluations from Dr. Mintzer, C.R.'s school system, and the directly contradictory findings of State Agency consultants in reaching his ultimate conclusion regarding the severity of C.R.'s impairment.  There is no indication that other significant evidence in the record was ignored by the ALJ and, moreover, the ALJ's opinion provides a rationale and reasoning sufficient to facilitate judicial review.  As such, the ALJ's opinion is supported by substantial evidence.

## III.  <u>CONCLUSION</u>

For the reasons stated above, the Commissioner's finding will be affirmed.  The accompanying Order is entered.


DATE: **May 22, 2007**          **s/ Noel L. Hillman**

At Camden, New Jersey          NOEL L. HILLMAN

United States District Judge

27